UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __7/31/08____

DESSERT BEAUTY, INC.,                    :

                Plaintiff,      :

      - against -              :

MARA FOX,                                :

                Defendant.      :

- - - - - - - - - - - - - - - - - -x                    **OPINION**

MARA FOX,                                :                    05 Civ. 3872 (DC)

                Third-Party    :
                Plaintiff,
                               :

      - against -              :

SEPHORA, INC. et al.,                    :

                Third-Party    :
                Defendants.    :

- - - - - - - - - - - - - - - - - -x

**APPEARANCES:**          (see last page)

**CHIN, District Judge**

      At the heart of this litigation are two words:  "love potion."  Defendant and third-party plaintiff Mara Fox registered the trademark LOVE POTION for perfumed essential oils in 1995 and filed a declaration of incontestability for the LOVE POTION mark in 2001.  In 2004, plaintiff Dessert Beauty, Inc. ("DBI") launched a line of beauty products that included two fragrance products described as "love potion fragrance" and "belly button love potion fragrance."  At issue is whether DBI's use of the words "love potion" infringed Fox's LOVE POTION trademark, or whether the use was fair use, immune from liability.

DBI seeks a declaratory judgment that it did not violate Fox's trademark; it also seeks to cancel the LOVE POTION trademark registration on the ground that it is generic. DBI additionally sues Fox for intentional interference with business relations arising from Fox's attempts to protect her trademark. In turn, Fox asserts claims against Sephora, Inc. ("Sephora") and other unnamed third-party defendants for trademark infringement under the Lanham Act and California law.

The parties cross-move for summary judgment. For the reasons that follow, I conclude that DBI's use of "love potion" constituted fair use. Thus, DBI's motion is granted to the extent that judgment will be entered declaring that DBI did not engage in trademark infringement. Fox's motion for summary judgment is granted to the extent that DBI's claim that she intentionally interfered with its business relations is dismissed; her motion is otherwise denied.

**BACKGROUND**

A.    **The Facts**

The following facts are drawn from affidavits, attached exhibits, and deposition testimony submitted by the parties. For purposes of these cross-motions, the facts are construed in the light most favorable to Fox, except with respect to DBI's intentional interference with business relations claim.

## 1.   Fox's Love Potion Perfume

Fox created the "Love Potion Perfume" in 1990.  In 1995, she registered the words "love potion" for "perfumed essential oils for personal use" with the U.S. Patent and Trademark Office ("USPTO").  (Fox Decl. Ex. A).  In 2001, Fox filed a declaration of incontestability with the USPTO for the mark LOVE POTION.  (Id. ¶¶ 3, 5).

Fox concocted the Love Potion Perfume for a friend who "was having no luck in finding a relationship." (Krages Decl. Ex. 5).  According to Fox's website www.lovepotionperfume.com, entitled "Love Potion:  Magickal Perfumerie & Gift Shoppe," her Love Potion Perfume is the "first Magical, Mystical, Wearable Love Potion," "[c]omprised from Ancient Aphrodisiac Recipes." (Id.).  Fox claims that she uses "the strongest ingredients known to inspire feelings of Love, Lust, Passion and Desire" and that her Love Potion Perfume "REALLY IS A Love Potion." (Id. (emphasis in original)).

The Love Potion Perfumes are sold in a clear bottle and packaged in a clear plastic bag and an organza[1] pouch[2]:

---

[1]    "Organza" is a "sheer, stiff fabric of silk or synthetic material."  The American Heritage Dictionary 876 (2d College Ed. 1991).

[2]    Although Fox contends that she has used a variety of packaging over the years, she does not dispute that her products at one time were packaged in clear bottles and organza pouches as shown above.  Furthermore, she has not produced any evidence of other types of packaging.



(<u>Id.</u> Ex. 4).  A label with the words "Love Potion Perfume" is affixed to the bottle.

### 2.  **DBI's Beauty Products**

In 2004, DBI launched a line of beauty products that were endorsed by celebrity Jessica Simpson.  (Shimanoff Decl. Ex. 16).  As part of DBI's advertising and marketing campaign, Simpson told the story that "every time [her then husband] would kiss [her] lips or skin, he would taste [her] lipstick, body lotion, and perfume -- and hate it."  (<u>Id.</u>).  Thus, the DBI products were created to "smell and taste good" and were advertised as "lickable, tasteable, and . . . kissable."  (<u>Id.</u>).  Products such as the "Whipped Body Cream with Candy Sprinkles," "Chocolicious Body Gloss," and "Powdered Sugar Body Shimmer" were named after ingredients used to make desserts to suggest their "edible nature."  (<u>Id.</u>; Tr. 5).[3]

---

[3]     References to "Tr." are to the transcript of the oral argument on July 15, 2008.

In a catalogue entitled "Menu," DBI listed its products available in the Dessert Beauty line, such as "Bath Bubbles" and "Sugar Scrub." (Shimanoff Decl. Ex. 16). Two fragrance products are included. The "Love Potion Fragrance" was offered in three varieties: "Creamy, Juicy & Dreamy." (Id.). The "Belly Button Love Potion Fragrance," offered in "Creamy" and "Juicy," was intended to be applied to the navel and sold in a "roll-on" container. (Id.). The packages and bottles referred to the fragrance products as the "deliciously kissable love potion fragrance" or the "deliciously kissable belly button love potion." (Krages Decl. Ex. A; Shimanoff Decl. Ex. 13).



(Shimanoff Decl. Ex. 13).

DBI's trademark was DESSERT, which was indicated as such by the trademark symbol "TM" next to the word "Dessert" on

all of its packaging and advertising materials. Its logo consisted of a pink lipstick stain and the mark DESSERT inside a black circle. Beneath the circle was the phrase "Sexy Girls Have Dessert" in script. The DESSERT trademark, in conjunction with the lipstick stain logo and catch phrase (the DBI "indicia"), was displayed prominently on every DBI product and used in all advertising materials.

### 3.  <u>Fox's Actions to Protect Her Trademark</u>

Fox's lawyer routinely issued cease and desist letters to manufacturers and retailers that sold perfume products containing the term "love potion." (<u>See</u> Shimanoff Decl. Ex. 1). The record contains approximately 80 such letters sent to different vendors between 2000 and 2006.

After learning in April 2004 that DBI was using the words "love potion" for its fragrance products, Fox's lawyer demanded that Randi Schinder, co-creator of the Dessert Beauty products, and David Suliteanu, president of Sephora USA LLC, "[c]ease and desist from any further use of the [LOVE POTION] mark" and "[p]rovide an accounting of any and all sales made to date." (<u>Id.</u> Ex. 17; <u>see also</u> <u>id.</u> Ex. 16). DBI's lawyer, on behalf of both DBI and Sephora, responded in a letter dated April 23, 2004, stating that DBI's "use of the term 'love potion' is fair use within § 33(b)(4) of the Lanham Act." (<u>Id.</u> Ex. 17). After exchanging several letters regarding whether DBI's use of "love potion" was fair use, DBI voluntarily agreed to "cease and desist from the use of the term 'love potion,'" "change its

website as soon as possible," and "delete the term 'love potion' from all bottles, packaging and advertising." (Id.). DBI steadfastly maintained, however, that its "use of 'love potion' in phrases like 'deliciously kissable love potion fragrance' [was] merely descr[i]ptive." (Id.). Despite DBI's agreement not to use "love potion," the parties continued to dispute the sufficiency of DBI's actions in removing the words "love potion" from its fragrance products.

In addition to direct communication with DBI and Sephora, Fox filed a report with eBay's Verified Rights Owner ("VeRO") Program, which allows intellectual property owners to flag listings on eBay that purportedly infringe their trademark rights. (Fox Decl. ¶ 19).

Fox also waged a public campaign on her website, which contained the following message:

> WE ARE A SMALL COMPANY DEFENDING OUR RIGHTFUL
> INCONTESTABLE TRADEMARKS AGAINST A
> CORPORATION THAT THINKS THEY CAN BULLY US
> BECAUSE THEY CAN AFFORD IT.  IF YOU FEEL YOU
> MUST SEND AN ANGRY LETTER, PLEASE DIRECT IT
> TO THEM FOR THEIR ILLEGAL, IMMORAL, UNETHICAL
> BUSINESS PRACTICE.

(Shimanoff Decl. II Ex. 5 (emphasis in original)).[4]  She hired a public relations company, which issued a press release in January 2006 about this lawsuit and DBI's alleged infringement of Fox's trademark. (Id. Ex. 1).  The press release, quoting Fox's third-party complaint, stated that DBI "willfully and maliciously

---

[4]    "Shimanoff Decl. II" refers to Shimanoff's declaration submitted with DBI's opposition to Fox's motion for summary judgment.

initiate[d] a campaign to flood the major internet search engines with key word spamming to direct any inquiries of LOVE POTION to their retailers." (Id.). Fox was quoted, stating that "in the first month following [DBI]'s launch, her sales were reduced by 96%. The following month, they were down 97%." (Id.). The press release also indicated that DBI "reported sales exceeding $120 million dollars." (Id.). This press release was reported by numerous media publications, including the New York Post, which wrote that "the bimbonic blonde and her business partners ripped off [Fox's] trademarked cosmetics brand." (Id. ¶ 4, Ex. 1).

## B.    **Procedural History**

DBI commenced this action against Fox and Love Potion LLC for:  (1) a judgment declaring that DBI did not infringe Fox's trademark, (2) cancellation of Fox's LOVE POTION registration, and (3) damages for intentional interference with business relations.  Fox filed counterclaims against DBI and a third-party complaint against Sephora and others, asserting:  (1) trademark infringement under the Lanham Act and state law, (2) false designation of origin under the Lanham Act, and (3) interference with prospective economic advantage.

In April 2006, DBI and Sephora filed their first motion for summary judgment to dismiss all Fox's claims and to cancel Fox's trademark registration for "Love Potion."  In a memorandum decision issued on August 7, 2007, I granted the motion as to Fox's tortious interference with economic advantage claim, but

denied the motion as to Fox's federal and state trademark infringement claims and false designation claim. See Dessert Beauty, Inc. v. Fox, No. 05 Civ. 3872 (DC), 2007 WL 2244870 (S.D.N.Y. Aug. 6, 2007). I also denied the motion to the extent DBI sought to cancel Fox's registration of the LOVE POTION mark.

Both parties now cross-move for summary judgment. DBI and Sephora move again to dismiss Fox's remaining claims on the ground that there is no trademark infringement or, in the alternative, that DBI's use of the term "love potion" is fair use. Fox moves to dismiss DBI's complaint in its entirety. I heard argument on July 15, 2008 and reserved decision.

## DISCUSSION

For the following reasons, I conclude that DBI's use of the term "love potion" is fair use within the meaning of section 33(b)(4) of the Lanham Act.[5] Accordingly, I do not address the parties' cross-motions with respect to the trademark infringement claims and proceed directly to the fair use analysis. Then I turn to the part of Fox's motion for summary judgment seeking dismissal of DBI's tortious interference claim.

## A. Summary Judgment Standard

Summary judgment is appropriate only where the parties' submissions "show that there is no genuine issue as to any

---

[5]  There is "substantial congruence in California trademark law and the Lanham Act," and the fair use analysis for claims under the Lanham Act applies to claims under California law as well. Bell v. Harley Davidson Motor Co., 539 F. Supp. 2d 1249, 1261 (S.D. Cal. 2008). Accordingly, I address only the federal claim.

-9-

material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Summary judgment is inappropriate if the Court, resolving all ambiguities and drawing all reasonable inferences against the moving party, finds that the dispute about a material fact is "such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

## B. **Fair Use**

The fair use doctrine permits the use of protected marks to describe certain aspects of goods, but not as marks to identify the goods. Even if a party's conduct would otherwise constitute infringement of another's trademark, fair use provides an absolute defense to liability. See 15 U.S.C. § 1115(b)(4); see also Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co., 125 F.3d 28, 30 (2d Cir. 1997); Something Old, Something New, Inc. v. QVC, Inc., No. 98 Civ. 7450 (SAS), 1999 WL 1125063, at *6 (S.D.N.Y. Dec. 8, 1999). Section 33(b)(4) of the Lanham Act defines fair use as "a use, otherwise than as a mark, . . . of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of [a] party." § 1115(b)(4). Accordingly, to avail itself of the fair use defense, DBI must have made use of Fox's LOVE POTION mark "(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith." EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc., 228 F.3d 56, 64 (2d Cir. 2000). I address these elements in turn.

## 1. __Non-Trademark Use__

A trademark use occurs when a mark indicates the source or origin of consumer products.  See <u>Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC</u>, 221 F. Supp. 2d 410, 414 (S.D.N.Y. 2002) (defining non-trademark use in the context of trademark parody).  Here, DBI did not use "love potion" as a trademark because the source of its fragrance products was not identified by that term.  Instead, the source was indicated by its own trademark DESSERT in conjunction with the lip stain logo and catch phrase "Sexy Girls Have Dessert," which were prominently displayed on all DBI products.  Words on a product's packaging generally do not serve as a trademark where there is also a conspicuously visible trademark that clearly serves that function.  See <u>Cosmetically Sealed</u>, 125 F.3d at 30-31 (the "non-trademark use of the challenged phrase [is] evidenced by the fact that the source of [plaintiffs'] product is clearly identified by the prominent display of [their] own trademarks").  Moreover, DBI placed a TM symbol only next to the word "Dessert," highlighting the non-trademark use of "love potion."  The TM symbol was not placed next to the words "love potion."

Moreover, DBI used the words "love potion" within the phrase "Love Potion Fragrance" or "Belly Button Love Potion Fragrance" to identify particular products within the DBI line.  These names are listed in the "Menu" of beauty products along with the descriptive or generic names of other products such as "Bath Bubbles" and "Sugar Scrub."  (Shimanoff Decl. Ex. 16).  The

product names served to distinguish the love potion fragrance products from other DBI products rather than to distinguish them from non-DBI products.  (Id.).

Fox argues that a product name can constitute trademark use.  (See, e.g., Tr. 14).  Product names, however, generally do not amount to trademark use because such names, as a "common descriptive name of a product," are generic, San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm., 483 U.S. 522, 532 n.7 (1987), and generic terms cannot be trademarked under the Lanham Act, see, e.g., Papercutter, Inc. v. Fay's Drug Co., 900 F.2d 558, 562 (2d Cir. 1990).  Product names identify a category or class of goods, but do not indicate the source of the goods.  For instance, "perfume" is a product name that indicates that the product emits a fragrant scent when sprayed, but the word "perfume" does not indicate who manufactured the particular product.  Accordingly, at least two courts in this Circuit have held that "regardless of whether or not a person knows that [a given word] is a trade-mark, if he uses the trade-mark word as the name of the product, it is used in a descriptive sense and is therefore generic." Am. Thermos Prods. Co. v. Aladdin Indus., Inc., 207 F. Supp. 9, 20 (D.C. Conn. 1962); see also W.R. Grace & Co. v. Union Carbide Corp., 581 F. Supp. 148, 154-55 (S.D.N.Y. 1983) (holding that a product name is not a trademark use, but is generic).  Hence, because DBI used the words "love potion" not to describe the source of the product but as a product name in a generic, descriptive sense, the use was not trademark use.

## 2. **Descriptive Use**

Fox argues that "love potion" can never be used in a descriptive sense when referring to perfume products because "love potion" is "a liquid consumable that is drunk" and "has not been used in its common parlance to describe [or] refer to a fragrance." (Tr. 18-19). Fox thus raises the question whether the term "love potion" can describe a product that is not, in actuality, a love potion. I conclude that it may for purposes of the fair use defense.

A use of a mark is descriptive if "the words were used to describe the 'ingredients, quality or composition' of a product, not the source of the product." JA Apparel Corp. v. Abboud, No. 07 Civ. 7787 (THK), 2008 WL 2329533, at *19 (S.D.N.Y. Jun. 5, 2008) (citing In Re Colonial Stores Inc., 394 F.2d 549, 551 (C.C.P.A. 1968)). Though the Lanham Act recognizes the fair use defense where the name or term is used "to describe the goods," § 1115(b)(4), the Second Circuit has explained that the statute "has not been narrowly confined to words that describe a characteristic of the goods, such as size or quality. Instead, [the Second Circuit has] recognized that the phrase permits use of words or images that are used, in Judge Leval's helpful expression, in their 'descriptive sense.'" Cosmetically Sealed, 125 F.3d at 30 (citing Car-Freshner Corp. v. S.C. Johnson & Son, Inc., 70 F.3d 267, 269 (2d Cir. 1995)).

For instance, the Second Circuit has held the fair use defense applicable to a clothing manufacturer's use of the phrase

-13-

"Come on Strong" as "describing a presumably desirable effect" of its menswear, even though articles of clothing do not literally "come on strong." B & L Sales Assocs. v. H. Daroff & Sons, Inc., 421 F.2d 352, 354 (2d Cir. 1970). The Second Circuit has also held that even though "the words 'Seal it with a Kiss' do not describe a characteristic of the defendants' [lipstick], they surely are used in their 'descriptive sense' -- to describe an action that the sellers hope consumers will take, using their product." Cosmetically Sealed, 125 F.3d at 30. In Jean Patou, Inc. v. Jacqueline Cochran, Inc., 201 F. Supp. 861 (S.D.N.Y. 1962), aff'd, 312 F.2d 125 (2d Cir. 1963), the plaintiff was the owner of the registered trademark JOY for use on perfumes and sought to enjoin the defendant from using the phrase "Joy of Bathing" on its bath products. But the court concluded that the challenged phrase was "designed to suggest the pleasure which will accompany the use of defendant's product in one's bath, and thus performs a descriptive function." Jean Patou, 201 F. Supp. at 865. Accordingly, when determining whether a use is descriptive, courts in the Second Circuit consider not only "whether the mark used describes certain aspects of the alleged infringer's own goods," but also "whether the mark as used describes an action the alleged infringer hopes consumers will make of its product." EMI Catalogue, 228 F.3d at 64-65.

Viewed in this broad sense, it is clear that DBI used "love potion" descriptively. First, the words, by themselves, are descriptive. Dictionary.com defines "love potion" as a

product "believed to arouse love or sexual passion toward a specified person." (Shimanoff Decl. Ex. 7). See Radio Channel Networks, Inc. v. Broadcast.com, Inc., No. 98 Civ. 4799 (RPP), 1999 WL 124455, at *3 (S.D.N.Y. Mar. 8, 1999) (consulting dictionary definitions when determining whether term "radio channel" was used in the descriptive sense). Although the words "love potion" do not describe an actual quality of DBI's fragrance products, they are used to describe the effects that the products may have on whoever "kisses" or "tastes" the products worn by the wearer, or at least to describe the purpose with which consumers will use the product.

Second, the term "love potion" is a common term in the English language. The very fact that "love potion" is defined in several dictionaries as a product used for the purpose of attracting the opposite sex reflects the ordinary usage of the term to describe products used for those purposes. Moreover, the record contains approximately 80 cease and desist letters that were sent by Fox, indicating that "love potion" was commonly used by many sellers in the cosmetics industry to describe a product's purported effect on others.

Third, that many merchants received warning letters from Fox for using "love potion" demonstrates that there is no other reasonably available word to describe the meaning captured by the term "love potion," namely, that the opposite sex will be attracted to the wearer of the product. Descriptive use is evident in such situations "[w]here a mark incorporates a term

-15-

that is the only reasonably available means of describing a
characteristic of another's goods." EMI Catalogue, 228 F.3d at
65; see also New Kids on the Block v. News Am. Publ'g, Inc., 971
F.2d 302, 308 (9th Cir. 1992); 2 McCarthy on Trademarks and
Unfair Competition § 10:14 (4th Ed. 1999) ("Since the use of a
descriptive title cannot serve to prevent others from using the
title in a descriptive, non-trademark sense, others may be able
to use the title as the only term available.").  "To expect
[plaintiffs] to use unwieldy or long terms would be contrary to
the purpose of the fair use defense, [and Fox] cannot monopolize
words and images that are used descriptively." Something Old,
1999 WL 1125063, at *7.

          Finally, descriptive use is often evident in the manner
of use, such as the "physical nature of the use in terms of size,
location, and other characteristics in comparison with the
appearance of other descriptive matter or other trademarks," EMI
Catalogue, 228 F.3d at 65 (quoting Restatement (Third) of
Unfair Competition § 28 cmt. c. (1995)), as well as "the presence
of the defendant's own trademark in conjunction with the
descriptive term," § 28 cmt. c; see also Something Old, 1999 WL
1125063, at *6 ("In determining descriptive use, the total
context of the allegedly infringing term is considered, including
lettering, type style, size and placement.").  The factors noted
above that indicated non-trademark usage -- such as the prominent
use of the DESSERT brand name -- also demonstrate DBI's
descriptive use of "love potion."  For instance, the presence of

a TM symbol next to DESSERT, contrasted with the absence of the symbol next to the words "love potion," suggests not only that "love potion" on the DBI products was a non-trademark use, but also that it constituted descriptive use. Moreover, on all the packaging, the words "love potion" were placed off-center and printed in a smaller font size than the trademark DESSERT. Most indicative of descriptive use is that "love potion" was used with other words to form a phrase describing the products.

### 3. Good Faith

Fair use analysis also requires a finding that defendants used the protected mark in good faith. A "lack of good faith [is equated] with the subsequent user's intent to trade on the good will of the trademark holder by creating confusion as to source or sponsorship." EMI Catalogue, 228 F.3d at 66. In analyzing the good faith element, "the focus of the inquiry is . . . whether defendant in adopting its mark intended to capitalize on plaintiff's good will." Id. Furthermore, "[b]ecause the good faith inquiry in a fair use analysis necessarily concerns the question whether the user of a mark intended to create consumer confusion as to source or sponsorship, . . . the same contextual considerations [evaluated in a likelihood of confusion analysis for a trademark infringement claim] apply to a court's analysis of good faith in the fair use defense." Id. at 66-67. Thus, "a court must take into account the overall context in which the marks appear and the totality of factors that could cause consumer confusion" just

as it would "[w]hen considering the likelihood of confusion and assessing the similarity of two marks." Id. at 66. In addition, the court, on a motion for summary judgment, must consider all evidence in the record pointing to the alleged infringer's both good and bad faith. Id. at 76.

Turning to the evidence in the record, Fox argues that the following facts raise a material issue for trial concerning plaintiffs' alleged bad faith: first, DBI did not conduct a trademark search prior to the launch of its beauty products; and second, both DBI and Sephora failed to take necessary action to discontinue the sale of allegedly infringing products after receiving Fox's cease and desist letters.

With respect to DBI's failure to conduct a trademark search, it is well established that "failure to perform an official trademark search . . . does not, standing alone, prove . . . bad faith." Savin Corp. v. Savin Group, 391 F.3d 439, 460 (2d Cir. 2004) (citing Streetwise Maps, Inc. v. VanDam, Inc., 159 F.3d 739, 746 (2d Cir. 1998)) (internal citations omitted); see also EMI Catalogue, 228 F.3d at 67; Car-Freshner, 70 F.3d at 270. Even if plaintiffs had prior knowledge of Fox's trademark, that fact would not demonstrate lack of good faith without additional evidence supporting an inference of bad faith. See, e.g., Savin Corp., 391 F.3d at 460; Arrow Fastener Co. v. Stanley Works, 59 F.3d 384, 397 (2d Cir. 1995); EMI Catalogue, 228 F.3d at 67; Car-Freshner, 70 F.3d at 270. Thus, as a matter of law, DBI's failure to conduct a trademark search prior to using "love potion," standing alone, does not demonstrate bad faith.

Fox also points to DBI's alleged failure to discontinue the sale of products with the words "love potion" after she provided notice of the alleged trademark infringement. But the "failure to completely abandon the use after receiving a cease and desist letter is insufficient to support an allegation of bad faith" as a matter of law. Something Old, 1999 WL 1125063, at *7; see also Wonder Labs, Inc. v. Procter & Gamble Co., 728 F. Supp. 1058, 1064 (S.D.N.Y. 1990) (failure to abort advertising campaign upon receipt of cease and desist letter "is absolutely no proof that the defendant acted in bad faith to capitalize on the plaintiff's trademark"). Notice of Fox's trademark rights -- either by her trademark registration or the cease and desist letters -- "does not preclude use of the words contained in [Fox's] registered mark in their primary[, descriptive] sense," Wonder Labs, 728 F. Supp. at 1064, especially where DBI believed that its use was descriptive, see Something Old, 1999 WL 1125063, at *7. Indeed, the numerous letters exchanged between the parties indicate that DBI had maintained the position that its use of "love potion" was fair use. (See, e.g., 4/23/04 Letter ("our client's use of the term 'love potion' is fair use"); 5/24/04 Letter (same)).[6] In its June 4, 2004 letter to Fox, DBI "for business reasons, [agreed] to cease and desist from the use of the term 'love potion,'" but nevertheless maintained that its "use of 'love potion' in phrases like 'deliciously kissable love potion fragrance' [was] merely descr[i]ptive." (6/4/04 Letter).

---

[6]      These letters are found in Shimanoff Decl. Ex. 17.

These letters show that DBI believed that its use of "love potion" was descriptive.

On the record before the Court, no reasonable jury could find bad faith; to the contrary, a reasonable jury could only conclude that DBI acted in good faith. An indication of good faith is "the display of defendant's own name or trademark in conjunction with the mark it allegedly infringes." EMI Catalogue, 228 F.3d at 67, citing Cosmetically Sealed, 125 F.3d at 30. This is so because the use of a distinct trademark minimizes any likelihood of confusion as to the source or sponsorship of a product. See W.W.W. Pharmaceutical Co., Inc. v. Gillette Co., 984 F.2d 567, 573 (2d Cir. 1993) ("Where a similar mark is used in conjunction with a company name, the likelihood of confusion may be lessened."). As discussed above, all DBI products had the DESSERT trademark and indicia, reflecting DBI's efforts to differentiate its products in the marketplace rather than to trade on Fox's, or any other seller's, good will.

Furthermore, in light of "the overall context in which the marks appear and the totality of factors that could cause consumer confusion," EMI Catalogue, 228 F.3d at 66-67, the dissimilarities between the products are patently obvious as to dispel any inference that DBI was trying to pass its products as one of Fox's Love Potion Perfumes or to confuse consumers as to source or sponsorship. The only similarity is the term "love potion," which alone is insufficient to establish a likelihood of confusion. See Clairol, Inc. v. Cosmair, Inc., 592 F. Supp. 811,

815 (S.D.N.Y. 1984) ("the mere fact that two marks may share words in common is not determinative" in assessing likelihood of confusion).

The differences between the products and their marks, however, are manifest -- a fact that Fox herself concedes.  (Tr. 19).  "Love potion" is written in different fonts on the parties' products; on the DBI labels, "deliciously kissable love potion fragrance" is written in sans serif font, but "Love Potion Perfume" is written in cursive.  In addition, "Love Potion Perfume" is written on a white label strung to the perfume bottle.  In contrast, the DBI product names and trademark are emblazoned directly on the bottles and packaging.  Moreover, Fox's Love Potion Perfumes are sold in a diamond-shaped bottle and packaged in a clear plastic bag and organza pouch.  On the other hand, DBI's love potion fragrance is packaged in a long, cylindrical tube with a pumping device; its belly button love potion fragrance is sold in a roll-on container and packaged in a rectangular box.

Notwithstanding both parties' usage of the words "love potion," a reasonable jury could only find that it was not likely that consumers would be confused.  In short, no reasonable jury could conclude that plaintiff acted in bad faith to capitalize on Fox's trademark.  Indeed, the evidence only shows plaintiff's good faith.  Because there is no material issue warranting trial with respect to the fair use defense, plaintiff's motion for summary judgment on the trademark claims is granted and Fox's cross motion is denied.

## C.    <u>Intentional Interference with Business Relations Claim</u>

The remaining claim is plaintiff's intentional interference with business relations claim against Fox. To sustain a claim for tortious interference with a business relation or prospective economic advantage, "a plaintiff must show that (1) it had a business relationship with a third party, (2) the defendant knew of and intentionally interfered with that relationship, (3) the defendant's interference amounts to 'wrongful means,' and (4) the defendant's interference caused injury to the relationship." <u>Friedman v. Coldwater Creek, Inc.</u>, No. 06 Civ. 4785 (LAP), 2008 WL 282141, at *4 (S.D.N.Y. Jan. 28, 2008) (citing <u>Kirch v. Liberty Media Corp.</u>, 449 F.3d 388, 400 (2d Cir. 2006)). Here, DBI's tortious interference claim must be dismissed because there is no evidence from which a jury could conclude that Fox used wrongful means to interfere with DBI's business relationships with third parties.

DBI does not argue that Fox's cease and desist letter to Sephora or the report filed with eBay's VeRO program about the alleged trademark infringement amounts to tortious interference. Indeed, the case law is clear that a "trademark owner is entitled to advise others of [her] trademark rights, to warn others that they or others are or may be infringing [her] rights, to inform others that [she] is seeking to enforce [her] rights through legal proceedings, and to threaten accused infringers and their customers with suit." <u>Leopold v. Henry I. Siegel Co.</u>, 2 U.S.P.Q.2d 1715, 1717 (S.D.N.Y. 1986).

Rather, DBI claims that Fox "embarked on a vexatious media campaign" by hiring a public relations company "to indiscriminately broadcast" false statements about DBI's alleged trademark infringement and ultimately "taint[ed] DBI's image with the goal of extorting the company." (Pl. Opp. Mem. at 29). DBI also claims that Fox's statements on her webpage, which encouraged consumers to "send an angry letter [about DBI's] illegal, immoral, unethical business practice," further interfered with its business relations.

As a matter of law, however, these actions do not support a tortious interference claim because DBI has not identified any third party or any prospective business relation with which Fox interfered by making false statements about its use of her trademark. Instead, it argues that Fox spread "unfounded claims to the world" by issuing a press release and posting statements on her website. (Pl. Opp. Mem. at 28 (emphasis added)). But the "public and customers at large are far too general to constitute a specific third party" for purposes of a tortious interference claim. General Motors Corp. v. Dealmaker, LLC, No. 07 Civ. 141 (TJM), 2007 WL 2454208, at *9 (N.D.N.Y. Aug. 23, 2007). Hence, Fox's summary judgment is granted with respect to DBI's tortious interference claim.

## CONCLUSION

For the reasons set forth above, DBI's motion for summary judgment is granted to the extent that judgment will be entered declaring that the fair use defense provides an absolute

-23-

defense to liability under the Lanham Act and California law. Fox's cross-motion for summary judgment is granted in part and denied in part; it is granted with respect to DBI's tortious interference claim, but denied with respect to the trademark infringement claims under federal and state law.

Because plaintiff has stated that it would not pursue its cancellation claim if it prevails on its fair use defense (Tr. 12), this claim is dismissed, on consent. No outstanding claims or counterclaims remain.

DBI shall submit a proposed judgment on notice within seven business days, and upon the entry of judgment, the Clerk of the Court shall close this case.

SO ORDERED.

Dated:    New York, New York
          July 31, 2008

                                        DENNY CHIN
                                        United States District Judge

-24-

**<u>APPEARANCES</u>**

For Plaintiff and Third-Party Defendants:

      COWAN, LIEBOWITZ & LATMAN, P.C.
          By:  Arlana S. Cohen, Esq.
              Eric Joseph Shimanoff, Esq.
              William M. Borchard, Esq.
      1133 Avenue of the Americas
      New York, New York  10036

For Defendant and Third-Party Plaintiff:

      BERT P. KRAGES, II
      6665 SW Hampton Street, Suite 200
      Portland, Oregon  97223

          - and -

      LOANZON LAW FIRM
          By:  Tristan C. Loanzon, Esq.
      386 Park Avenue South, Suite 1914
      New York, New York  10016